IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| FRANK JONES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 119-011 |
| | ) | |
| WARDEN, Baldwin State Prison, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Baldwin State Prison in Hardwick, Georgia, brings the above-captioned petition, through counsel, pursuant to 28 U.S.C. § 2254.  Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.      **BACKGROUND**

On May 15, 2012, a Richmond County grand jury indicted Petitioner on two counts of aggravated child molestation.  (Doc. no. 9-1, pp. 16-18.)  After a trial held June 2-4, 2014, a jury convicted Petitioner on the first count of aggravated child molestation but acquitted him on the second count.  (Doc. nos. 1-2; 1-8 to 1-12.)  On July 11, 2014, the trial court sentenced Petitioner to life imprisonment.  (Doc. nos. 1-3; 1-14.)  Retained attorneys Bobby Christine and Chuck Evans represented Petitioner at trial.  (Doc. no. 1-8, p. 1.)

Although Mr. Christine filed a Motion for New Trial, (doc. no. 1-4, pp. 29-31), newly-retained counsel Jose A. Baez filed an Amended Motion for New Trial raising several grounds of ineffective assistance of counsel against Mr. Christine.   (See id. at 1-28.) Relevant to the current federal habeas corpus petition, the enumerations of error included allegations of ineffective assistance based on Mr. Christine:  (1) failing to object to or seek to preclude prejudicial and improperly admitted testimony by prosecution witness Lorraine Fraijo; (2) calling a defense expert witness, Joseph Frey, III, Ph. D., who contradicted and eviscerated Petitioner's defense; and (3) failing to investigate and present exculpatory medical evidence which Petitioner maintains rendered him incapable of performing the acts of which he was accused.  (Id. at 11-12, 14-21, 23-26.)  After holding a hearing, (see doc. no. 1-13), the trial court denied the motion for new trial.  (Doc. no. 1-5.)

 Mr. Baez filed a direct appeal raising multiple allegations of error, and, relevant to this federal petition, raised the following allegations of ineffective assistance against Mr. Christine:

(1)     failing to object when the State's witness, Ms. Fraijo, described the minor victim's disclosure of the offense as "genuine";

(2)     presenting a defense witness, Dr. Frey, who testified, when asked if it was fair to suggest that the minor victim in this case was lying, that children of the minor victim's age do not lie about abuse and that the minor victim's disclosure in this case was "valid"; and

(3)     failing to present expert testimony to demonstrate that Petitioner could not, within a reasonable degree of medical certainty, have committed the acts in question as a result of his medical condition.

(Doc. no. 1-6, pp. 2-3.)

In an unpublished opinion, the Georgia Court of Appeals described the facts adduced at trial as follows:

A.H.'s mother met Jones in Colombia, South America and came to the United States in October 2009, with her two daughters, A.H. and M.H.  Jones and the mother married on January 4, 2010, and moved into Jones' home in Augusta.  Two weeks later, the family was lying on the bed in the master bedroom watching a movie when Jones asked the mother to make some popcorn.  When the mother returned to the bedroom, she observed that Jones had "A.H. with her head [on] top of his gentiles (sic)."  The mother screamed and the girls ran crying from the master bedroom.  The mother went to check on the girls and the three barricaded themselves in the girls' bedroom for many days; the mother would come out for food only when Jones was out of the house.

The mother did not report the incident for many months after it occurred, testifying that "I have no case in doing anything because [Jones] was American, he was in [the] military, I was here and I did not speak English.  I don't have a way to do anything.  He will make [my] life impossible."  Instead, she tried to protect her daughters by placing bells in the girls' bedroom so she could hear if Jones entered the room and by having sex with Jones, reasoning that "[i]f I didn't have sexual relationship with him he may [have] it with my children, with my daughters."  After the mother was injured in a car accident in 2012, she was afraid to return home with her daughters because she would not be able to watch Jones all of the time because her pain medication made her sleepy.  When a priest came to see her to ask her to return home, she told him what Jones had done to A.H.  With the priest's assistance, the mother reported Jones to the police.

A.H. testified at trial that Jones "put his penis in my mouth and he put his tongue in my private part."  During a videotaped interview at the Augusta Child Advocacy Center, which was introduced into evidence and played for the jury, A.H. recounted an incident "when [Jones] put that in [her] mouth something came out of his thing."  She explained that it was "white stuff" and that she spit it out and "it felt so horrible when Jones' thing was in [her] mouth."  Pointing to her vagina, A.H. also told the interviewer that after she moved to the United States on October 20, 2009, Jones put his tongue "in it" and also put his "thing" in her mouth, and that both happened more than one time in her "mom and dad's bed."  A.H. explained that she was six years old and living in Colombia the first time Jones put his "thing" in her mouth.  She also told the interviewer that her mom saw Jones put his tongue in her vagina

3

and her mouth on his penis and that she got very mad.  According to A.H., she was lying on the bed next to Jones watching a movie with her sister while her mom was in the kitchen making coffee, when Jones put his "thing" in her mouth.  After her sister and mother saw what happened, her mother kept the girls in a room for weeks so Jones would not do "anything to us."  A.H. denied that her biological father, who lived in Colombia, or anyone else from Colombia had molested her.  During her forensic interview at the Advocacy Center,  A.H.'s sister told the interviewer that she saw Jones take out his "pee-pee" and put in in A.H.'s mouth.

(Doc. no. 1-7, <u>Jones v. State</u>, No. A17A1900, slip op. at 1-4 (Ga. Ct. App. Jan. 26, 2018).)

The Court of Appeals affirmed Petitioner's conviction.  Applying the well-known test from <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), the appellate court rejected all alleged errors, including the three ineffective assistance claims now raised in this federal petition. Specifically, the appellate court found Ms. Fraijo's description of A.H.'s disclosure as "genuine" did not amount to improper bolstering, and even assuming the testimony was inappropriate, Mr. Christine made a reasonable strategic decision not to object.  (Doc. no. 1-7, pp. 6-10, 14-15.)  Likewise, calling Dr. Frey to testify about deficiencies in the forensic interview, explain behavioral patterns of sexually abused children, and support an alternative defense theory that A.H. had been molested but my someone other than Petitioner was a strategic choice falling within the broad range of reasonable professional conduct, despite the unexpected comment on cross-examination that children of A.H.'s age do not lie about abuse.  (<u>Id.</u> at 15-17.)

Finally, the appellate court reasoned Mr. Christine's decision not to present expert medical testimony was a reasonable trial strategy because (1) the suggestion Petitioner was unable to perform the acts alleged was contradicted by the mother's testimony she had

marital relations with Petitioner and testimony from another witness about Petitioner's sexual activity; (2) counsel was able to avoid damaging evidence that Petitioner was taking medicine to treat his erectile dysfunction; and (3) there was no evidence to substantiate a claim the victim would have been infected by hepatitis-C based on the conduct alleged. (Id. at 18-21.)   In rejecting all ineffective assistance claims, the appellate court also noted the jury acquitting Petitioner on one of the two charges strongly supported the conclusion Mr. Christine provided effective assistance. (Id. at 22.)

Petitioner, through counsel, then timely filed the above-captioned § 2254 petition, raising the following three claims:

(1) Counsel was ineffective for failing to preserve expert testimony to demonstrate that Petitioner could not, within a reasonable degree of medical certainty, have committed the acts in question as a result of his medical condition. (Doc. no. 1, pp. 25-31; doc. no. 12, pp. 3-10.)

(2) Counsel was ineffective for presenting a defense witness, Dr. Frey, who testified that children of the minor victim's age do not lie about abuse and that the minor victim's disclosure in this case was "valid." (Doc. no. 1, pp. 31-35; doc. no. 12, pp. 10-12.)

(3) Counsel was ineffective for failing to object when the State's witness, Ms. Fraijo, described the minor victim's disclosure of the offense as "genuine." (Doc. no. 1, pp. 35-38; doc. no. 12, pp. 13-15.)

## II.   STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -

5

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014). Rather, the habeas petition must show the state court's decision was "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling

6

"was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because

the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.   DISCUSSION

Applying AEDPA deference to the ineffective assistance of counsel claims previously analyzed and rejected by the Court of Appeals of Georgia, federal habeas relief is not warranted. See Wilson v. Sellers, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018) (requiring federal habeas court to review reasons of merits-based decision by state court and defer to those reasons if they are reasonable). As explained in detail above, the Court is guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe, 834 F.3d at 1337.

Moreover, to the extent Petitioner indirectly challenges the facts as determined by the state appellate court by making legal arguments, that does not rebut by clear and convincing evidence the presumption of correctness attached to the state opinion. Davis v. Sellers, 940 F.3d 1175, 1188 & n.12 (11th Cir. 2019). Specifically, in his Reply, Petitioner urges the Court to reject Respondent's reliance on the findings of the state appellate court, and instead invites the Court to conduct what implicitly amounts to its own review of the record to determine what the facts show. (See doc. no. 12.) However, "Federal habeas proceedings 'are not forums in which to relitigate state trials.'" Jamerson v. Sec'y for Dep't of Corr., 410

F.3d 682, 687 (11th Cir. 2005).   As described above, AEDPA requires the Court give deference to the state-court decision, and that deference must be "near its apex" when considering Strickland claims that turn on general, fact-driven standards. Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (2018) (*per curiam*).

A.   **Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).   Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.   In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).   "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way." Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691.   "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993).   Indeed, "strategic choices are 'virtually

unchallengeable.'"  Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (*en banc*)).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.  Strickland, 466 U.S. at 690.  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).  That is, Strickland requires application of a totality-of-the-circumstances standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.  Khan v. United States, 928 F.3d 1264, 1273 (11th Cir.) (citation omitted), *cert. dismissed*, 140 S. Ct. 339 (U.S. Nov. 5, 2019).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).  As recently emphasized by the Eleventh Circuit:

> [D]eferential review under Strickland does not ask whether counsel could possibly or ideally have been more effective.  "The test for ineffectiveness is

not whether counsel could have done more." We do not ask whether an attorney's representation "deviated from best practices or common custom," and we should resist the temptation to second-guess an attorney with the benefit of our hindsight. We ask only "whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance."

Jenkins v. Comm'r, Ala. Dep't of Corr., 936 F.3d 1252, 1271 (11th Cir. 2019) (internal citations omitted).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to

determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Richter, 562 U.S. at 105.

"Surmounting Strickland's high bar is never an easy task." Id. (citing Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem,

12

review is doubly so." Id. (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 578 U.S.-, 136 S. Ct. 1149, 1151 (2016) (internal quotations and citations omitted).

To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial." Richter, 562 U.S. at 105; see also Sexton, 138 S. Ct. at 2560 ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); Woods, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

**B.** **The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground One Was Not Objectively Unreasonable**

In Ground One of the federal petition, Petitioner argues he received ineffective assistance from Mr. Christine because counsel failed to present evidence of an erectile and ejaculation disability, including Petitioner's diagnosis of hepatitis-C, erectile dysfunction, pharmacological schedule and history, and Petitioner's self-reported symptoms. According

to Petitioner, despite knowing Petitioner had a multitude of mental and physical conditions, Mr. Christine unreasonably failed to fully investigate his health issues.

Petitioner relies on the testimony offered at the hearing on the motion for new trial by Jerry Walter Bush, M.D.  (Doc. no. 1-13, pp. 75-114.)  According to Petitioner, Dr. Bush's testimony stands unrebutted "that Petitioner's multiple diagnoses, extensive medical history, pharmacological schedule and history, and self-reporting symptoms *all* combine" to show Petitioner was incapable of erection or ejaculation.  (Doc. no. 12, p. 4.)  However, as found by the appellate court, Dr. Bush also confirmed (1) at the time of the events alleged, Petitioner had been prescribed Levitra, which can help a patient achieve an erection; and (2) Dr. Bush had no records to show Petitioner had complained of erectile dysfunction during the relevant time period and did not know whether Petitioner was actually taking Levitra at the time in question.  (Doc. no. 1-7, p. 19; doc. no. 1-13, pp. 93-95.)  In fact, Dr. Bush admitted he had seen no records showing Petitioner was in poor health or symptomatic at the time of the sexual abuse.  (Doc. no. 1-13, p. 96.)

Applying Strickland, the Georgia Court of Appeals rejected this claim, finding Mr. Christine pursued a reasonable trial strategy not to present medical expert testimony.  Mr. Christine had nearly twenty years of experience, including eleven years in criminal defense, at the time he represented Petitioner.  (Id. at 7-9.)  At the hearing on the motion for new trial, Mr. Christine explained he had discussed at length with Petitioner his medical history.  (Id. at 51.)  However, after speaking to two medical professionals who informed Mr. Christine hepatitis-C would not have to be transmitted during sexual activity and did not present an

impediment to accomplishing the acts alleged, he and Petitioner decided not to pursue a medical defense.  (Id. at 56-57, 66-67.)  Moreover, prior to trial, Petitioner's sister told Mr. Christine that Petitioner was capable of sexual activity, (id. at 117), and Petitioner's wife testified at trial she had sexual relations with Petitioner during the relevant time period, (doc. no. 1-9, p. 46).

The appellate court concluded Mr. Christine's decision not to present expert medical evidence was a reasonable trial strategy for multiple reasons:  (1) there was contradictory evidence about the expert conclusion Petitioner could not physically perform the acts alleged; (2) opening the door to admission of the fact Petitioner had used Levitra to treat erectile dysfunction would have been extremely damaging to the defense, and (3) there was no basis for arguing hepatitis-C would have necessarily been transmitted as a result of the sexual abuse alleged.  (Doc. no. 1-7, pp. 20-21.)  Petitioner has presented nothing to refute these conclusions.   Rather, Petitioner argues Mr. Christine should have done more to investigate Petitioner's medical condition.  But "should have done more" is not the standard.  Jenkins, 936 F.3d at 1271 ("The test for ineffectiveness is not whether counsel could have done more."); see also Ward, 592 F.3d at 1164 ("The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . .")

The record supports the conclusion Mr. Christine reasonably chose to focus his efforts someplace other than delving into a weak and risky medical argument.  (Doc. no. 1-13, pp.

51, 54-57, 66-67.)  "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." Yarborough, 540 U.S. at 8.  Petitioner argues in hindsight that Mr. Christine should have done something more or different with respect to the medical record.  However, the law is clear, there is no absolute duty to investigate particular facts or defenses, and which defenses to pursue is a matter of strategy to which great deference - double deference in these federal habeas proceedings - is due.  Chandler, 218 F.3d at 1317-18.

Not only has Petitioner failed to establish deficient performance by Mr. Christine, but he also has not established prejudice in light of the failure to provide conclusive medical evidence he was incapable of the sexual abuse described under oath by the victim, her sister, and her mother.  Petitioner argues Dr. Bush's testimony regarding Petitioner's inability to have an erection or ejaculate would have necessarily resulted in acquittal because it would have discredited the victim's testimony about having to spit out Petitioner's semen.  Such speculation completely ignores other contradictory evidence outlined above, as well as the information concerning Petitioner's sexual activities during the relevant time period, and does not come close to undermining the double deference owed to the state-court decision on this point.  Indeed, Mr. Christine testified Petitioner's sister told him prior to trial that Petitioner and the victim's mother had sex, (doc. no. 1-13, p. 117), and the victim's mother testified at trial she had sexual relations with Petitioner.  (Doc. no. 1-9, p. 46.)

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner has not shown ineffective assistance of counsel with

respect to Mr. Christine's decision not to pursue a medical defense to the charges by presenting a medical expert, and this claim provides no basis for federal habeas corpus relief.

### C.     The State Court's Application of __Strickland__ to Petitioner's Ineffective Assistance Claim in Ground Two Was Not Objectively Unreasonable

In Ground Two of the federal petition, Petitioner argues he received ineffective assistance from Mr. Christine because Dr. Frey, a defense witness, testified on cross-examination that children of the minor victim's age do not lie about abuse and that the minor victim's disclosure in this case was "valid."   According to Petitioner, Mr. Christine unreasonably failed to properly investigate the parameters of Dr. Frey's opinion on a critically important point, resulting in a failure to anticipate and prevent introduction of Dr. Frey's highly damaging opinion.

Petitioner contends the state appellate court's rejection of this claim was an unreasonable application of __Strickland__ because the state court applied an incorrect standard of prejudice and focused on the overall impact of Dr. Frey's testimony rather than on Mr. Christine's failure to anticipate and control Dr. Frey's answers on cross-examination. Petitioner concedes Dr. Frey's testimony impeached the interview technique and conclusions drawn by Ms. Fraijo, the State's witness who interviewed the minor victim and her sister, and provided support for the alternative defense that the minor victim could have been sexually abused by someone other than Petitioner.  (Doc. no. 12, pp. 11-12.)  According to Petitioner, however, these positive aspects of Dr. Frey's testimony "were illusory at best," (__id.__ at 12), and Mr. Christine's failure to sufficiently investigate Dr. Frey's opinions

regarding "a core aspect of [Petitioner's] defense that the minor victim was simply not telling the truth" resulted in ineffective assistance.  (Doc. no. 1, p. 34.)

Applying <u>Strickland</u>, the Georgia Court of Appeals rejected this claim, reasoning that choosing an "expert witness is the paradigmatic example of the type of strategic choice that, when made after thorough investigation of the law and facts, is virtually unchallengeable." (Doc. no. 1-7, p. 16 (citing <u>Davis v. State</u>, 806 S.E.2d 3, 9 (Ga. Ct. App. 2017).)   The appellate court recognized Mr. Christine's strategy for calling Dr. Frey was to provide testimony about deficiencies in the forensic interview, explain behavioral patterns of sexually abused children, and support an alternative defense theory that A.H. had been molested but by someone other than Petitioner.  (<u>Id.</u>)  Indeed, at the motion for new trial Mr. Christine explained he and Dr. Frey "counseled a good bit" about the theories of the case and in the end decided to call Dr. Frey because Dr. Frey:

> . . . gave us [a] professional explanation and opened the door to what was a significant part of the defense, which was the theories of plausibility, susceptibility, suggestibility.  Those theories dovetailed with our belief in a perpetrator other than [Petitioner] in Colombia.  Particularly important - - that was particularly important that [if] the jury believed that molestation had occurred, that he could help us illuminate how it could quite reasonably be that the children were molested by somebody other than [Petitioner].

(Doc. no. 1-13, p. 37.)

The appellate court concluded there was no ineffective assistance because "[a] strategy which presents an alternative defense theory, which is better for the defendant than the prosecution theory of the case, generally falls within the broad range of reasonable professional conduct." (Doc. no. 1-7, p. 16 (citing <u>Davis</u>, 806 S.E.2d at 9).)

Petitioner urges the Court to reject the state court's conclusion because he believes Mr. Christine did not properly investigate Dr. Frey's opinions, and therefore his decision to present the expert testimony does not fall within the category of a virtually unchallengeable strategic choice. (Doc. no. 1, pp. 32-35; doc. no. 12, pp. 10-12.) The Court disagrees.

First, Petitioner has not established Mr. Christine failed to properly investigate Dr. Frey's opinion on the critical point of the credibility of the minor victim. As set forth above, Mr. Christine had chosen to pursue a dual theory of the defense which would allow the jury to believe the victim had been abused but still acquit Petitioner if the jurors could be convinced someone else had performed the acts alleged. (Doc. no. 1-13, p. 37.) Petitioner does not dispute Dr. Frey provided favorable evidence for the defense, and provides an after-the-fact characterization of the favorable evidence as "illusory" because of the effective cross-examination by the prosecutor.

The record shows when the prosecutor asked about a portion of the forensic interview captured on video, and queried whether Dr. Frey had any evidence to suggest the victim was coached to say anything in particular or was lying, he responded, "I  -  -  I just don't believe that children this age lie about things this serious." (Doc. no. 1-11, p. 62.) When the prosecutor asked Dr. Frey about his theory regarding susceptibility to a false memory as it related to the victim's description of spitting out semen, Dr. Frey testified the victim's disclosure of performing that act "sounded like a valid disclosure." (Id. at 63.)

Although Mr. Christine may not have expected the prosecutor to elicit testimony from Dr. Frey that the victim's disclosure was truthful and valid - as the state court termed it

"unexpected" testimony - Mr. Christine knew prior to trial Dr. Frey was not going to be able to say the whole case was "balderdash."  (Doc. no. 1-13, pp. 46-47.)  Yet, he made a strategic decision to use the expert testimony in support of an alternative defense theory that could allow the jury to believe the victim had been molested, but not by Petitioner.  Mr. Christine's decision to use Dr. Frey, after meeting with him and determining he could provide potentially helpful information for the defense, is the epitome of a strategic decision that should not be second-guessed in the Strickland analysis, even if the prosecutor scores points on cross-examination by eliciting unexpected testimony.   See Ledford v. Warden, Ga. Diagnostic and Classification Prison, 818 F.3d 600, 650-51 (11th Cir. 2016).

Second, the case law upon which Petitioner relies is inapposite.  Initially, Petitioner cites a pre-AEDPA case in which the court specifically acknowledged it owed no deference to the state-court decision that a trial tactic was reasonable under Strickland.  (Doc. no. 1, p. 33 (citing Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991).)  Of course, as discussed in detail herein, this Court gives AEDPA deference to the state-court decision that Mr. Christine's use of Dr. Frey was a reasonable trial tactic.  Next, Petitioner cites non-binding Sixth Circuit precedent that counsel provided ineffective assistance when surprised by testimony of a defense expert that destroyed the sole defense upon which counsel had built his case.  (Id. (citing Combs v. Coyle, 205 F.3d 269, 287 (6th Cir. 2000).)

Here, however, as the state court found, Dr. Frey provided information in support of the alternative defense that was "provided in spades" to Mr. Christine during his trial preparation, (doc. no. 1-13, p. 73), namely, "if A.H. had been molested, it was by someone else, such as her biological father in Colombia."  (Doc. no. 1-7, pp. 16-17.)  Not only has

Petitioner failed to establish deficient performance by Mr. Christine, but Petitioner also has not shown the trial outcome would have been different if a different expert had been called, or if Dr. Frey had not testified at all.  Indeed, as the state court pointed out, Mr. Christine was able to win acquittal on one of the two charges.

Because of the "heavy measure of deference" owed to strategic decisions, to show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.  Strickland, 466 U.S. at 690, 691. "Decisions about which experts to call and which issues to press during trial are, without a doubt, strategic."  Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1302 (11th Cir. 2019), pet. for cert. docketed, No. 19-6918 (U.S. Dec. 12, 2019).  "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."  Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (per curiam) (citations omitted). Petitioner has not established Mr. Christine's choice to use Dr. Frey as an expert witness was patently unreasonable, even in light of the unexpected testimony on cross-examination, particularly given that he was able to present evidence in support of the alternative defense.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner has not shown ineffective assistance with respect to Mr. Christine's decision to present Dr. Frey as a defense witness, and this claim provides no basis for federal habeas corpus relief.

**D.** **The State Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claim in Ground Three Was Not Objectively Unreasonable**

In Ground Three of the federal petition, Petitioner argues Mr. Christine provided ineffective assistance because he failed to object when the State's witness, Ms. Fraijo, described the minor victim's disclosure of the offense as "genuine."  According to Petitioner, Mr. Christine's failure to object was deficient because Ms. Fraijo's opinion invaded the province of the jury by focusing on facts usually weighed in determining witness credibility rather than, as permitted under Georgia law, focusing on child-appropriate language. Petitioner argues the failure to object was prejudicial under <u>Strickland</u> because the case depended, in large part, on the victim's credibility which, as evidenced by a not-guilty verdict on one charge, had been rejected by the jury.

Petitioner contends the state appellate court's rejection of this claim was an unreasonable application of <u>Strickland</u> because the court applied a plain error standard of review when determining (1) Ms. Fraijo's opinion on the genuineness of the minor victim's disclosure did not amount to improper bolstering; and (2) the failure to pursue a meritless objection cannot amount to ineffective assistance.  (Doc. no. 1, pp. 35-38.)  According to Petitioner, because there is "grave doubt as to the harmlessness of [the] error" with respect to Ms. Fraijo's testimony, this Court should grant relief.  (<u>Id.</u> at 37; doc. no. 12, p. 15.)

Applying <u>Strickland</u>, the Georgia Court of Appeals rejected this claim, reasoning that Ms. Fraijo's response to a question about coaching was permissible under Georgia law and did not amount to improper bolstering.  (Doc. no. 1-7, pp. 6-10.)  At trial, the testimony at issue occurred when the prosecutor asked Ms. Fraijo, the person who conducted the

interview of the victim and her sister at the Augusta Child Advocacy Center, whether she had

seen evidence of coaching in her interview with the victim.  (Doc. no. 1-9, p. 2.)

> A.      So coaching is something that we learned about in the trainings that we
> go through, forensic training, child sexual abuse training, and instead of
> looking for coaching, we look for things that might make an interview or
> statement of a child more genuine.  So in this interview I was able to pick up
> on things that to me made it a more genuine interview.
>
> Q.      What were those points that you observed that you thought were
> genuine?
>
> A.      Sure.  So a couple of things that I look for just off the cuff or if a child
> is using their own words so child appropriate language, age appropriate
> knowledge and contextual detail.  Those are the three things and in this
> interview, you know, she - - she refuses to give me a name [for] the vaginal
> area.  Instead just points to it until later she called it a cookie or pookie and
> then in regards to age appropriate knowledge, you know, she gives me quite a
> genuine disclosure about white stuff that children just don't know about and
> then the contextual detail, you know, she was convinced they were watching a
> movie, that mom was making coffee.  And so when you're able to tell me
> about things that were happening before or where other people were or how it
> made me feel, I mean, I think you can remember a point in the interview when
> I asked her how did it make you feel when his thing was in her mouth she
> obviously kind of shuttered and it felt terrible or disgusting.  I wrote the word
> down.   It felt horrible is what she said.

(Id. at 2-3.)

Relying on Georgia law, the court of appeals acknowledged witness credibility is a

matter for the jury and may not be bolstered by another witness's opinion on truthfulness.

(Doc. no. 1-7, p. 6 (citing Freeman v. State, 638 S.E.2d 358, 361 (Ga. Ct. App. 2006) and

O.C.G.A. § 24-6-620).)   The appellate court further provided examples of testimony which

had been approved in child sexual abuse cases and concluded Ms. Fraijo's testimony fell

within those acceptable boundaries.   (Id. at 7-9 (citing e.g., Odom v. State, 531 S.E.2d 207,

209 (Ga. Ct. App. 2000) and Dority v. State, 780 S.E.2d 129, 139-40 (Ga. Ct. App. 2015).)

Moreover, the appellate court concluded that even if the testimony was inappropriate, Mr. Christine made a reasonable strategic choice not to object in an effort to preserve the alternative defense that if the victim had been abused, it was by her biological father in Colombia, and therefore the ineffective assistance claim failed.  (Id. at 14-15.)

Petitioner makes no effort to distinguish the case law upon which the appellate court based its decision, relying instead only on his interpretation of what Ms. Fraijo's testimony meant, and he concludes, "In this context, the use of that term [genuine] could only be interpreted by the jury to mean that Fraijo *believed* A.H. was telling the truth."  (Doc. no. 1, p. 36.)  But of course, Petitioner cannot actually know how the jury interpreted Ms. Fraijo's testimony, and federal habeas proceedings "are not forums in which to relitigate state trials." Jamerson, 410 F.3d at 687.  In any event, Petitioner has not produced any case supporting his contention, or establishing the appellate court's interpretation of state law was incorrect.

Moreover, even though Petitioner's current ineffective assistance claim is one of constitutional dimension, this Court should "defer to the state's construction of its own law" when the federal ineffective assistance claim is based on counsel's failure to raise an issue of state law.  Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1295 (11th Cir. 2017); see also Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").  Therefore, when considering under the current circumstances "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard," Pinkney, 876 F.3d at 1295, the Court presumes the Georgia Court of Appeals knows, and correctly applied, Georgia law. The Court of Appeals found Ms. Fraijo's testimony permissible under Georgia law.  Counsel

cannot be ineffective for failing to raise a meritless claim.  See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

The appellate court also determined Mr. Christine pursued a reasonable trial strategy in not objecting to the testimony, even if it were inappropriate.  (Doc. no. 1-7, p. 15.)  Mr. Christine explained he "was walking a fine line strategically" on how to treat the evidence from the victim to preserve "a major part of the defense" that if the abuse had occurred, it occurred at the hands of someone other than Petitioner.  (Doc. no. 1-13, p. 32.)

> To completely eviscerate the truthfulness of the child wouldn't get rid of the eyewitness mother.  I tell you that I struggled in preparations a long time on how to approach a child molestation, where there was not just the testimony of the victim, nor just the testimony of one eye witness, but two.  I struggled with that.  So how - - you know, I might be able to discredit mom, I might be able to discredit the child, but to discredit them both and the other child, I was walking a fine line.

(Id. at 32-33.)   As explained supra, the Court must be highly deferential to counsel's reasonable trial strategy, Devier, 3 F.3d at 1450, and strategic choices are virtually unchallengeable.  Provenzano, 148 F.3d at 1332.

Petitioner argues, in hindsight, Mr. Christine could have argued both that the abuse did not occur, but if it did, Petitioner was not the abuser and still objected to Ms. Fraijo's testimony.  (Doc. no. 1, pp. 36-37; doc. no. 12, pp. 11-12.)  However, "The failure to make every valid objection . . . will not necessarily take counsel's performance 'outside the wide range of professionally competent assistance,' which is the scope of permissible performance."  Brewster v. Hetzel, 913 F.3d 1042, 1057 (11th Cir. 2019).  Petitioner's current calculation of what would have happened had Mr. Christine pursued a different

strategy fails to establish ineffective assistance because there "are countless ways to provide effective assistance in any given case." See Strickland, 466 U.S. at 689.

Not only has Petitioner failed to establish Mr. Christine would have had a valid objection, but he has not shown that even if there were a valid objection, prejudice occurred that would have changed the outcome of the trial, particularly because the victim was not the sole source of evidence about the abuse.   In the end, Petitioner's proposed, alternative strategy to object to Ms. Fraijo's testimony - formulated after Mr. Christine's strategy proved unsuccessful as to one of two counts - fails to carry the day.   See id. (requiring highly deferential judicial scrutiny of counsel's performance without distorting effects of hindsight and application of strong presumption conduct falls within wide range of reasonable professional assistance).

Finally, for the sake of completeness, the Court notes the case law offered in support of this claim is the pre-AEDPA case, O'Neal v. McAninch, 513 U.S. 432, 442 (1995). Petitioner maintains O'Neal requires the Court grant relief "[w]hen a matter is so evenly balanced" that there is "grave doubt as to the harmlessness of an error" affecting a petitioner's substantial rights.  (Doc. no. 1, p. 37.)  Not only does this pre-AEDPA case not address the deferential review the Court is required to afford state-court decisions, as explained in detail above, but Petitioner's reliance on the case assumes an error occurred, an assumption which has no basis in the record now before this Court.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.   Petitioner has not shown ineffective assistance based on Mr.

Christine's decision not to object to Ms. Fraijo's description of the minor victim's disclosure of the offense as "genuine," and this claim provides no basis for federal habeas corpus relief.

## IV.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 30th day of January, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA